

-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID AUGUST GAMBINO,

          Plaintiff,

      -v-                           12-CV-0824Sc
                                    **ORDER**

CAPTAIN PAYNE, SERGEANT WILLIAMS,
JAMES R. VONTOUR, KEVEN M. SMITH,
CAPTAIN ENGERT, and SERGEANT LIWZINKI,

          Defendants.

_____

## INTRODUCTION

Plaintiff, James August Gambino, currently awaiting sentencing in this Court following a plea, <u>United States v. Gambino</u>, 09-CR00372-RHA-JMM-1, and who is detained at the N.E.O.C.C. in Youngstown, Ohio, has filed this pro se action under 42 U.S.C. § 1983 seeking relief for actions or inaction he claims occurred while he was detained at the Niagara County Jail in 2012. Plaintiff also seeks permission to proceed *in forma pauperis* and has filed Prison Authorization (Docket No. 2 and 5).[1]

Plaintiff sets forth a number of claims related to his pre-trial detention at the Niagara County Jail, including a denial of

_____

[1] Plaintiff also moves for the appointment of counsel. (Docket No. 3). A more fully developed record will be necessary before the Court can determine whether plaintiff's chances of success warrant the appointment of counsel. Therefore, plaintiff's motion is denied without prejudice to its renewal at such time as the existence of a potentially meritorious claim may be demonstrated. See <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 392 (2d Cir. 1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

his right to access to the courts, to file grievances and to freely practice his religion through the provision of edible kosher meals. He also alleges a denial of his right to privacy when he was required to shower in an area that exposed his lower body to others and a denial of access to dental and mental health services. (Docket No. 1, Complaint.)  For the following reasons, some of plaintiff's claims are dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, and the remaining claims will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, unless plaintiff files an amended complaint as directed below.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*.  Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint.  In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor.  *See* <u>Larkin v. Savage</u>, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); <u>King v. Simpson</u>, 189 F.3d 284, 287 (2d Cir. 1999).  While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir.

2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. <u>Wynder v. McMahon</u>, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 (quoting <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam* )).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Whalen v. County of Fulton</u>, 126 F.3d 400, 405 (2d. Cir. 1997) (citing <u>Eagleston v. Guido</u>, 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that some of plaintiff's claims must be dismissed pursuant to 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted.  In addition, the Court finds that the remainder of plaintiff's claims must be dismissed unless plaintiff files an amended complaint as directed below.

## A.   PLAINTIFF'S CLAIMS

### 1.   First Claim

Plaintiff alleges that defendant Captain Payne (1) intercepted and withheld documents that were sent to the service provided by the Jail to make copies of legal documents for inmates of the Jail, (2) did not allow plaintiff to report an incident of sexual conduct when he ordered his staff not to sign or accept the report and then had plaintiff transferred to the Allegany County Jail in order "to disable [plaintiff's] efforts to report the misconduct[,]" and (3) lied about and refused to accept plaintiff's grievance related to his kosher food being tampered with.  Plaintiff claims that as a result of Payne's "abuse of power," he was "subjected to abuses from many angles that [plaintiff] feel[s] were motivated by religious discrimination" and "[has] suffered tremendously and [his] ability to defend [his] case has been overshadowed and dominated by [his] need to eat properly and defend [himself] against the daily attack against [his] religion, privacy and lack of medical care."  (Complaint, Attachment, Section A, First Claim, at 1.)

4

This claim, as liberally construed, Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) ("the pleadings of a pro se plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they could suggest") (internal quotations and citation omitted), can be parsed into three separate alleged violations of plaintiff's constitutional rights: (1) denial of access to the courts; (2) denial of right to submit grievances; and (3) denial of freedom to practice one's religion (free exercise claim).

### Access to Courts

Plaintiff alleges that Payne intercepted documents he had sent to be copied thus interfering with his access to his legal work. This claims fails to state a claim upon which relief can be granted and must be dismissed with prejudice. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000) (An opportunity to replead should be denied where "the problem with [plaintiff's] causes of action [are] substantive" such that "[b]etter pleading will not cure it. Repleading would thus be futile.") (citation omitted).

In order to state an actionable denial of access to courts claim, plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). Accord Morello v. James, 810

5

F.2d 344, 347 (2d Cir. 1987).  Thus, plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials.  A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials.  <u>Lewis</u>, 518 U.S. at 351-52.  Taking plaintiff's claim as true, he nevertheless "offers no facts to explain how [the interference with the copying of some documents] prejudiced his ability to seek redress from the judicial system."  <u>Smith v. O'Connor</u>, 901 F. Supp. 644, 649 (S.D.N.Y. 1995); *see also* <u>Perez v. Metropolitan Correctional Center Warden</u>, 5 F.Supp.2d 208, 211-12 (S.D.N.Y.,1998) ("It is uncontested that plaintiff had counsel throughout every stage of his criminal proceedings.  As such, plaintiff's access to the courts claim must fail.  Plaintiff has no constitutional right to 'hybrid' representation-simultaneously pro se and by counsel.") (quoting <u>Faretta v. California</u>, 422 U.S. 806, 832 (1975)).

<u>Denial of Ability to File Grievances</u>

Plaintiff alleges that Payne refused to allow him to file grievances alleging sexual misconduct and tampering with his kosher food, and had him moved to another Jail in order to "disable" plaintiff's efforts to report the misconduct.  To the extent plaintiff is alleging that Payne interfered with his ability to file a grievance or report, it must be dismissed

because there is no constitutional right of access to an
established inmate grievance program. <u>Davis v. Buffardi</u>, 2005 WL
1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an
inmate grievance process is not a constitutionally protected
right"); <u>Shell v. Brzezniak</u>, 365 F.Supp.2d 362, 369-70
(W.D.N.Y.2005) ("[i]nmate grievance programs created by state law
are not required by the Constitution and consequently allegations
that prison officials violated those procedures does not give
rise to a cognizable § 1983 claim"); <u>Cancel v. Goord</u>, 2001 WL
303713, at *3 (S.D.N .Y. Mar. 29, 2001) ("inmate grievance
procedures are not required by the Constitution and therefore a
violation of such procedures does not give rise to a claim under
§ 1983").

To the extent Payne's alleged interference with plaintiff's
ability to file a grievance can be construed as a denial of
access to the courts, it does not state a claim upon which relief
can be granted "since under the Prison Litigation Reform Act of
1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), a
plaintiff whose access to the grievance process has been hindered
or foiled by actions of prison officials are excused from the
PLRA's exhaustion requirement and permitted to file suit without
having completed that process." <u>White v. Clark</u>, 2012 WL 5877160,
at * 8 (N.D.N.Y., Nov. 20, 2012) (citing <u>Hemphill v. New York</u>,
380 F.3d 680, 686-91 (2d Cir.2004)).

If the complaint is construed to allege that Payne violated plaintiff's constitutional rights by failing to allow or conduct an investigation into the alleged misconduct, that claim too must be dismissed because prisoners do not have a right to an investigation into grievances. Torres v. Mazzuca, 246 F.Supp.2d 334, 341-42 (S.D.N.Y.2003); see also DeShaney v. Winnebego Soc. Servs., 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); Pine v. Seally, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing Bernstein v. New York, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008)).

Lastly, plaintiff's allegation that Payne had him transferred to another County Jail to "disable" any efforts to report the sexual misconduct can also be broadly construed to allege retaliation for exercising his First Amendment right to redress grievances. If so construed, however, this claim must be dismissed because it, at best, is wholly conclusory and speculative.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. Mount Healthy School District v. Doyle, 429 U.S. 274, 287 (1977). To make out a §

1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996). A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority." <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 535 (2d Cir. 1994) (citation omitted). Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995) ("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care") (citing <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983)); *see also* <u>Graham</u>, 89 F.3d at 79. Thus, "[a] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim." <u>Flaherty</u>, *supra*.

Denial of Religious Practices

To the extent this claim is construed as separate and apart from plaintiff's claim that Payne denied him the ability to file a grievance or to investigate the food tampering grievance, the only allegation supporting this claim is that Payne denied and lied about the existence of plaintiff's grievance in relation to plaintiff's claim that his kosher food was being tampered with. (Complaint, Attachment, First Claim, ¶ 4, at 1.) Later in the complaint plaintiff alleges that his food was "mutilat[ed], smash[ed], shak[en] and contaminat[ed] with pubic hair . . . and [there was] missing food, rotten fruit, soaked bread and visual[ly] tampered with food . . . regardless of [plaintiff's] vocal requests to multiple officer[s] and sergeants." (*Id.*, Third Claim, ¶ 2, at 1.)

First, there are no allegations that Payne was personally involved in the food tampering. *See* Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (" '[i]t is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' ") (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)). Second, as addressed further below, these allegations are insufficient to allege a denial of plaintiff's First Amendment right to practice one's religion.

10

Plaintiff's allegations that his food was tampered with, while unpleasant, do not state a claim that his right to the free exercise of his religion was violated by Payne and thus must be dismissed, at least against Payne.  As addressed below, however, plaintiff, will be allowed to file an amended complaint in relation to this religious exercise claim against individual(s) who were personally involved in this alleged denial.

Accordingly, the First Claim is dismissed with prejudice in its entirety.  *See* <u>Cuocco</u>, 222 F.3d 99, 112.

### 2.  Second Claim

Plaintiff alleges that defendant Sergeant Williams, "initiated and enforced the stripping of the ability to cover (with sheets) the areas of the showers that allow exposure of [his] naked lower abdominal area during bathing." (Complaint, Attachment, Second Claim, ¶ 1, at 1.)  Plaintiff claims that the showers he was assigned were on the upper mezzanine and this gave others, including male and female Jail deputies, civilian workers and strangers and other male inmates, full view of his private body parts.  (*Id.*, ¶ 2, at 1.)

While plaintiff also names Captain Engert, Sheriff Vontour and Undersheriff Smith as defendants on this claim there are no allegations against them in relation to this shower area and thus this claim as against them must be dismissed.  *See* <u>Farrell</u>, 449 F.3d at 484 ("[i]t is well settled . . . that personal

11

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted); *see also* <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 691-95 (1978) (Plaintiff may not rely on the doctrine of *respondeat superior* to establish liability in a § 1983 action.)

The gravaman of plaintiff's claim, as broadly construed, is that the removal ("stripping") of sheets from the shower area by Williams exposed plaintiff's private (genital) area to others and thus violated his right to privacy. While prison inmates have diminished expectations of privacy, *e.g.*, <u>Hudson v. Palmer</u>, 468 U.S. 517, 524 (1984) (inmates have no expectation of privacy in their prison cell), "[pretrial detainees] do retain a limited right to bodily privacy [,]" <u>Covino v. Patrissi</u>, 967 F.2d 73, 78 (2d Cir.1992).

In <u>Corr. Officers Benev. Ass'n of Rockland City v. Kralick</u>, 2011 WL 1236135 (S.D.N.Y. Mar. 30, 2011), the district court, in addressing a union's claim that a County Jail's policy requiring that inmates in certain circumstances be guarded by corrections officers of the same sex was discriminatory, noted that recent cases in this Circuit and others addressing an inmate's right to privacy had "suggest[ed] that occasional, indirect or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is prohibited".

Id., at *11, n.13 and 14 (citing cases).  See also Baker v.
Welch, 2003 WL 22901051, at *20 (S.D.N.Y., Dec. 10, 2003)(male
parolee complained that a female parole officer watched him
provide a urine sample; "the balance should be struck to allow
incidental ... viewing but prohibit regular ... viewing."); Miles
v. Bell, 621 F.Supp. 51, 67 (D.Conn.1985) ("Those cases which
have found a violation of inmates' rights to privacy have looked
to the frequency or regularity of such 'viewing.'  As a general
rule, courts have found a violation only in those cases in which
guards regularly watch inmates of the opposite sex who are
engaged in personal activities, such as undressing, using toilet
facilities or showering....")

Similarly, in Rogers v. Clark, 1996 WL 328218 (W.D.N.Y.,
June 11, 1996) (Elfvin, J.), a male pre-trial detainee at the
Niagara County Jail brought a claim alleging that a female
officer assigned to an area of the Jail where male inmates are
housed had glanced at him as he was completing taking a shower
thus violating his right to privacy.  Judge Elvin granted summary
judgment to defendants and dismissed the claim finding that

> Bashfulness is not a protectable fundamental right or
> liberty interest. Further, to the extent that a glance
> at the unclothed body of a prisoner from a member of
> the opposite sex might be considered a search worthy of
> Fourth Amendment scrutiny, the incident was utterly
> harmless. The plaintiff has not provided a scintilla of
> evidence that it was intentional, continuous or
> lengthy. As such the facts presented do not rise to a
> constitutionally cognizable injury.... Such matters are
> better left to prison administrators or state tort law.

> In short, this Court will decline the opportunity to
> meddle in the administration of the Niagara County
> jail.

*Id.* at *1 (emphasis added).

The only allegation herein is that Williams "initiated and enforced" what appears to be the removal of curtains or sheets from part of the showers and that, as a result, plaintiff's genital area was exposed to others. There are no allegations that this was "intentional, continual or lengthy," *id.*, and thus this claim should be dismissed. Unlike some of plaintiff's other claims, however, this claim may be able to be cured through better pleading and, accordingly, plaintiff will be provided an opportunity to amend his complaint in relation to this claim against Williams <u>only</u>.

### 3. Third Claim

Plaintiff alleges that Sheriff Vontour, Undersheriff Smith, Captain Engert, Captain Payne, Sergeant Lewszinki, Sergeant Greenwald and Sergeant Williams "as top authoritative figures for [the] Niagara County Jail knowingly and willingly allowed the continuation . . . [of] the purposeful harassment and torment from the kitchen staff." (Complaint, Attachment, Section A, Third Claim, ¶ 1, at 1.) He alleges that his kosher meals were mutilated, smashed, shaken and contaminated with pubic hair on a daily basis. There was missing food, rotten fruit, and soaked bread and this "visual tamperered [sic]" food was allowed to be

served to him despite his "vocal requests" to numerous corrections officers and sergeants. He claims he was not provided with other food when his meals were tampered with and that he was forced to eat the food or go hungry. (*Id.*, ¶ 2, at 1.) He also claims that his "daily eating habits and there relationship and validity to Judaism, interrupted, intruded and undermined [his] ability to privately [and] securely learn and practice my beliefs." (*Id.*, at ¶ 4, at 1). This all resulted, plaintiff claims, in him being forced to find sustenance outside the kosher diet provided at the Jail. He claims that he was subjected to this for months and that its purpose was to deter or punish him from practicing his faith.

Initially, the Court notes that this claim must be dismissed because it is brought against the defendants in their roles as supervisory officials only. There are no allegations that any of the defendants named were personally involved in the alleged food tampering and interference with plaintiff's Kosher diet. *See* Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995). Plaintiff's conclusory allegations that he made oral objections to unnamed officers and sergeants do not state a claim that the defendants were personally involved in the alleged denial of his right to practice his religion freely. *Id.*;[2] Lewis v. Cunningham, 483

---

[2] Supervisor liability under § 1983 can be shown in one or more of the following ways: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the

15

Fed.Appx. 617, 2012 WL 1863980, at 1 (2d Cir. May 23, 2012) (Summary Order) ("[A] vague complaint is insufficient to permit a jury to find that a prison official's failure to act in response was deliberate indifference.") (citing <u>Colon</u>, 58 F.3d at 873).

As to whether plaintiff states a First Amendment Free Exercise claim, the Court finds that it does not but that plaintiff will be provided the opportunity to file an amended complaint to attempt to state such a claim against those individuals who were personally involved in the alleged denial of his First Amendment rights, including but not limited to the ones named herein assuming he can allege factually that they were personally involved in the alleged constitutional violation.

A prisoner has a "clearly established" First Amendment right to "a diet consistent with his or her religious scruples . . . ." <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. Oct. 17, 2007) (citing <u>Kahane v. Carlson</u>, 527 F.2d 492 (2d Cir.1975); <u>Bass v. Coughlin</u>, 976 F.2d 98, 99 (2d Cir.1992). "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." <u>McEachin v. McGinnis</u>, 357

---

violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." <u>Colon</u>, 58 F.3d at 874 (citation omitted).

F.3d 197, 203 (2d Cir. 2004); *see also* Johnson v. Guiffere, 2007
WL 3046703, at *4 (N.D.N.Y., Oct. 17, 2007).[3]  "The right of
prison inmates to exercise their religious beliefs, however, is
not absolute or unbridled, and is subject to valid penological
concerns, including those relating to institutional security."
Johnson, 2007 WL 3046703, at *4 (citing O'Lone v. Estate of
Shabazz, 482 U.S. 342, 348 (1987); Salahuddin v. Coughlin, 993
F.2d 306, 308 (2d Cir. 1993) (collecting cases)).

In order to establish a First Amendment Free Exercise claim,
it is the plaintiff's initial burden to establish that the
alleged conduct substantially burdens his sincerely held
religious beliefs.  Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d
Cir.2006); King v. Bennett, 2007 WL 1017102, at *4 (W.D.N.Y. Mar.

---

[3]The court notes that plaintiff relies solely on the First Amendment for
the basis of this claim but that he may also wish to assert a claim under the
Fourteenth's Amendment's Due Process Clause which requires that detainees be
provided with nutritionally adequate meals. *See* Liffiton v. Kiszewski, 2010 WL
2869570, at *3-4 (W.D.N.Y., July 1, 2012) (Foshio, L., U.S.M.J.) (challenges to
conditions of confinement by pre-trial detainees are assessed under the
Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's Cruel and
Unusual Punishment Clause that applies to such claims brought by convicted state
prisoners, to determine whether the alleged conditions "amount to punishment.")
(quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979) ("[u]nder the Due Process
Clause, a detainee may not be punished prior to an adjudication of guilt in
accordance with due process of law.") (other citations omitted).
However, a pretrial detainee alleging a denial of adequate food must show that
the denial "resulted from the deliberate indifference of the [jail] officials."
Liffiton, 2010 WL 2869570, at *3 (citing Caiozzo v. Koreman, 581 F.3d 63, 71, n.4
(2d Cir.2009) (citing cases)).

Because plaintiff's complaint does not rely in any way on the Due Process
Clause (or Eighth Amendment) and is emphatic that this claim is a religious-based
claim, the Court will not construe it, at this time, as also arising under the
Due Process Clause.  Moreover, even if the Court were to construe it as such,
plaintiff does not allege that the supervisory officials named as defendants were
deliberately indifferent to his nutritional needs.  Plaintiff may, however, if
he so wishes, assert such a claim in his amended complaint.

30, 2007).[4]   Once this is established, the defendants bear the "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these [articulated] concerns were irrational." Salahuddin v. Goord, 467 F.3d at 274-75 (internal quotation marks, citations & fn. omitted).

"A substantial burden is one that 'pressures [plaintiff] to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith.' " Sioleski v. McGrain, 2012 WL 6052158, at *1 (W.D.N.Y., December 05, 2012) (quoting Brown v. Graham, 2010 WL 6428251, at *15 (N.D.N.Y. Mar.30, 2010)).   The Court finds that plaintiff's allegations that kitchen staff tampered with his food in order to interfere with his Judaic religious beliefs are far too conclusory and speculative to state a claim under the First Amendment.

> [Federal Rule 8's pleading standard] does not require
> detailed factual allegations, but it demands more than
> an unadorned, the-defendant-unlawfully-harmed-me

---

[4]"Noting in its decision in Ford v. McGinnis a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test. 352 F.3d [at] 592-93 . . .  Recent cases from this and other courts suggest that the Second Circuit resolved this split in its decision in Salahuddin v. Goord, 467 F.3d 263 (2d Cir.2006) by subscribing to the substantial burden test." Johnson, 2007 WL 3046703, at *5, n.7 (citing Livingston v. Griffin, 2007 WL 1500382, at *15 (N .D.N.Y. May 21, 2007) ; King v. Bennett, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007) (Schroeder, H., U.S.M.J.)).  See also Sioleski v. McGrain, 2012 WL 6052158, at *1 (W.D.N.Y., December 05, 2012) ("[A] religious liberty claim requires the prisoner to demonstrate 'that the disputed conduct substantially burdens his sincerely held religious beliefs.' ") (quoting Salahuddin v. Goord, 467 F.3d at 274-75).

accusation.  A pleading that offers labels and
conclusions or a formulaic recitation of the elements
of a cause of action will not do.  Nor does a complaint
suffice if it tenders naked assertion[s] devoid of
further factual enhancement.
To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face.  A claim has
facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged.  The plausibility standard is not akin to a
probability requirement, but it asks for more than a sheer
possibility that a defendant has acted unlawfully.  Where a
complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between
possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation

marks and citations omitted).

    While the Second Circuit has cautioned the district courts

not to "judge the significance of particular devotional

obligations to an observant practitioner of faith," McEachin, 357

F.3d at 201, plaintiff's complaint is devoid of any allegations

that would establish that he has a sincerely held religious

belief and that the tampering with his food substantially

burdened said belief.  The Court recognizes that "detailed

factual allegations," are not necessary, but that a complaint

"demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S.

at 678.  As pled, plaintiff's First Amendment Free Exercise claim

is simply not plausible.  In fact, plaintiff's own complaint

19

infers that this food tampering by the kitchen staff was no more than general harassment, which is not actionable under § 1983.

Accordingly, plaintiff's First Amendment Free Exercise claim will be dismissed with prejudice unless plaintiff files an amended complaint as directed below.

### 4. Fourth and Fifth Claims

The Fourth and Fifth Claims are brought against Sheriff Vontour and Undersheriff Smith solely in their roles as supervisors responsible for the administration of the Jail. The Fourth and Fifth Claims allege that Vontour and Smith "holding full responsibility for actions and inactions" of the medical (Fourth) and mental health (Fifth) procedures at the Jail "failed to monitor and enforce appropriate procedural protocols that secure and ensure the inmates physical [Fourth] [and Mental Health (Fifth)] well being." (Complaint, Attachment, Section 5A, Fourth Claim, ¶ 1, at 1, and Fifth Claim, ¶ 1 at 1.) Plaintiff claims that the medical staff ignored prior diagnosis and treatment for dental  health issues that resulted in two tooth infections and caused the acceleration of "tooth enamel erosion" and "showed deliberate indifference" when the medical staff did not submit a referral nor make arrangements for outside treatment or transfer to a facility that could treat his teeth properly. (*Id.*, Fourth Claim, ¶ 2-6).)

As to the mental health claims, plaintiff alleges that mental health staff discontinued counseling due to funding issues, despite knowing that he needed additional or specialized treatment, and that the staff's neglect caused him to suffer sleepless nights, hypertension, anxiety and suicidal thoughts and paranoia.

Initially, it is clear that the claims against Vontour and Smith are brought against them in their supervisory capacities only and therefore fail to state a claim upon which relief can be granted against them. Simply alleging that the Jail's medical and mental health staffs failed to provide adequate treatment for his dental and mental health needs is not sufficient to state a claim against Vontour and Smith. *See* Colon, 58 F.3d at 873-74. Accordingly, the claims against Vontour and Smith are dismissed without prejudice.

Plaintiff will, however, be provided the opportunity to amend the complaint to allege a claim of deliberate indifference to his dental and mental health needs under the Due Process Clause against those individuals who were personally involved in the alleged deliberate indifference.[5]

---

[5]*See* n.3, *supra*. *See also* Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir., 2009) ("We reaffirm our position, stated in Arroyo v. Schaefer, 548 F.2d 47, 50 (2d Cir. 1977), that the standard for analyzing a claim of deliberate indifference to the health or safety of a convicted prison inmate held in state custody as a violation of the right of the inmate to be free from cruel and unusual punishment under the Eighth Amendment is also applicable to claims brought by pretrial state detainees under the Due Process Clause of the Fourteenth Amendment.")

In order for an inmate to state a claim of constitutional deprivation with regard to his access to medical care during pre-trial detention, the inmate must demonstrate that his medical needs were objectively "sufficiently serious," and that the individual to be charged with the violation was aware of, and deliberately indifferent to, those needs.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Caiozzo, 581 F.3d at 69 (applying Farmer test to pre-trial inmates under the Fifth and Fourteenth Amendments).  In order to show that an individual was deliberately indifferent to the plaintiff 's serious medical needs, the plaintiff must show (1) that "[the individual] knew of a substantial risk of serious harm to [plaintiff 's] health," and (2) that "[the individual] consciously disregarded that risk." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

The plaintiff's allegations in both the Fourth and Fifth Claims, even if brought against defendants personally involved in the alleged denial of adequate medical treatment, wholly fail to allege both a serious medical or mental health need and that the defendant(s) consciously disregarded the known risk of harm from the serious medical or mental health need.  Plaintiff's amended complaint must therefore be brought against individuals personally involved in the alleged constitutional deprivation(s) and allege factually that his dental and mental health needs were objectively "sufficiently serious," and that the defendant(s)

22

sued was aware of, and deliberately indifferent to, those needs. *See* <u>Farmer</u>, 511 U.S. at 834.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted.  For the reasons set forth above, the "First Claim" is dismissed with prejudice.  In addition, the "Second," "Third," "Fourth" and "Fifth" Claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) unless plaintiff files an amended complaint which includes the necessary allegations as to each of those Claims as set forth above.

Plaintiff is advised that an amended complaint is intended to <u>completely replace</u> the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." <u>International Controls Corp. v. Vesco</u>, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, <u>Vesco & Co., Inc. v. International Controls Corp.</u>, 434 U.S. 1014 (1978); *see also* <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).  Plaintiff is further forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B).  *See* 28 U.S.C. § 1915(g).

### ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* (Docket Nos. 2) is granted, and his motion for the appointment of counsel (Docket No. 3) is denied without prejudice;

FURTHER, that the First Claim is dismissed with prejudice;

FURTHER, that plaintiff is granted leave to file an amended complaint with respect to the Complaint's Second, Third, Fourth and Fifth Claims as directed above by **May 15, 2013**;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **May 15, 2013**, the complaint shall be dismissed with prejudice without further order of the Court;

24

FURTHER, that if plaintiff has not filed an amended complaint by **May 15, 2013**, the Clerk of the Court is directed to close this case as dismissed with prejudice; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

S/ Michael A.  Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:      March 28, 2013
            Rochester, New York